United States District Court
Southern District of Texas
**ENTERED**
January 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Vivian Wilhite, | § | |
| *Plaintiff*. | § | |
| | § | |
| v. | § | Civil Action No. H-18-866 |
| | § | |
| Texas Department of Family and | § | |
| Protective Services, et al., | § | |
| *Defendants*. | § | |

# Memorandum and Recommendations

Pending before the court is Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. 42.) The court recommends that Defendants' motion to dismiss be GRANTED. All other pending motions are DENIED as MOOT.

## I. BACKGROUND

Plaintiff Wilhite brought this federal civil rights action under 42 U.S.C. § 1983 on March 20, 2018. (D.E. 1.) After Defendants filed their first Rule 12 motion, Wilhite filed her First Amended Complaint, which Defendants moved to dismiss. (D.E. 11, 12, 13.) The court denied in part Defendants' second Rule 12 motion and allowed Wilhite to file another amended complaint. (D.E. 34.) Wilhite filed her Second Amended Complaint (SAC) on April 12, 2019. (D.E. 41.)

According to the SAC, Wilhite owned and operated a childcare facility, Royal T Child Development Center ("Royal T"), located in Fresno, Texas. SAC ¶ 1. Wilhite had two licenses issued by Texas Department of Family and Protective Services (DFPS): a business license for Royal T and a license to act as a director of a daycare center. SAC ¶ 3. Defendants Katina Rice, Kiara Hewitt-Saffold, Christina Harvey, and Debra Kimmel were employees of the Child Care Licensing Division of DFPS.[1] *See* SAC ¶¶ 2, 19. Harvey supervised Rice, and Rice supervised Hewitt-Saffold and Kimmel. SAC ¶ 20. Defendants inspected Royal T and issued citations on the following dates: June 4, 2015, June 29, 2015, August 7, 2015, November 20, 2015, February 1, 2016, February 16, 2016, and February 24, 2016. SAC ¶¶ 35–79. DFPS revoked both of Wilhite's licenses on March 21, 2016. SAC ¶ 13.

Wilhite argues that Defendants Rice, Harvey, Hewitt-Saffold, and Kimmel "maliciously conspired to abuse legal process and violate the Constitution for the express purposes of closing ROYAL T, eliminating competition for Defendant Rice's planned childcare center." SAC ¶ 21. Wilhite also argues that Defendants violated her Fourth and Fourteenth Amendment rights by "malicious use of evidence." SAC ¶¶ 110–17.

---

[1] The DFPS is authorized by law to impose an enforcement action against a child development center for noncompliance with standards. 40 Tex. Admin. Code § 745.8605 (2018). A single serious deficiency, including "background check matches," may support an enforcement action. *Id.* § 745.8605(5). A repetition or pattern of deficiencies may also support an enforcement action. *Id.* § 745.8605(7).

2

Wilhite bases her claims on the following allegations. Rice owned a competing childcare center in Wilhite's neighborhood and conspired with the other Defendants to damage Wilhite's business, a competitor to Rice's own childcare business. *See* SAC ¶¶ 12, 21. In 2014, Rice's supervisee admitted to Wilhite that Rice recruited her to make unfavorable findings against Royal T. SAC ¶ 33. Between June 2015 and March 2016, Rice ordered four different DFPS employees to inspect Royal T. *See* SAC ¶¶ 6–7. The inspectors found twenty-nine violations. SAC ¶ 8. Wilhite claims only one violation "was relatively true." SAC ¶ 8. She concedes that a caregiver working for Royal T did not know a child's age, as is required under the regulations. SAC ¶ 8. Wilhite alleges that Defendants issued meritless citations for her failure to complete an annual fire inspection and for her adult daughter being present at the childcare facility without a background check. *See* SAC ¶¶ 47–55, 63–71.

On March 21, 2016, Rice hand delivered to Wilhite a Notice of Intent to Impose Adverse Action against Royal T. SAC ¶ 80. Wilhite participated in an administrative review on March 29, 2016. She argued that the citations were not supported by facts and that Rice, who issued the citations, had a conflict of interest as the owner of a competing childcare business. SAC ¶¶ 87–93. Wilhite alleges that Harvey allowed Rice to revoke Wilhite's licenses even though she was aware that Rice had a conflict of interest. SAC ¶ 95.

Defendants move to dismiss Wilhite's action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* D.E. 42.) In her Response, Wilhite moves to dismiss her claims against Kimmel. (*See* D.E. 59 at 2.)

## II. STANDARD OF REVIEW

### A. Dismissal under Rule 12(b)(1)

A court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The party asserting jurisdiction has the burden to prove the court's subject matter jurisdiction. *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014). To determine a Rule 12(b)(1) motion, the court may rely on the complaint alone, undisputed facts evidenced in the record, and/or the court's resolution of disputed facts. *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Dismissal under Rule 12(b)(6)

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, the court is constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011);

4

*see also Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 708 (S.D. Tex. 2002) ("the court may not look beyond the four corners of the plaintiff's pleadings.").

"The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff," and "drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). Pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346 (2014); *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.").

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

5

unlawfully." *Id.* Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

Conclusory allegations "disentitle[] them to the presumption of truth." *Iqbal*, 566 U.S. at 681. It follows that the court, in reviewing the plaintiff's complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Where an "obvious alternative explanation" provides a more likely reason for the complained-of conduct, the plaintiff's claim does not cross the plausibility threshold. *See Twombly*, 550 U.S. at 567–69 (holding that industry norm and business incentives provided a more plausible explanation for the defendants' noncompetition than the plaintiff's allegation that the defendants conspired to engage in antitrust activity); *Iqbal*, 556 U.S. 681–82 (holding that the plaintiff's allegation of discrimination was not plausible on its face because the government's legitimate, heightened national security interests after 9/11 provided a more likely explanation for the plaintiffs' arrest and detention conditions).

### C. Extra-pleading Materials Presented on a Rule 12(b)(6) Motion

A Rule 12(b)(6) motion must be treated as a motion for summary judgment if matters outside the pleadings are presented to and not excluded by the court.

6

Fed. R. Civ. P. 12(d). The court has "complete discretion" to not rely on any material beyond the pleadings. *Porter v. Shearson Lehman Bros. Inc.*, 802 F. Supp. 41, 52 (S.D. Tex. 1992); *see also Medina v. Chertoff*, No. CV B-05-38, 2005 WL 8168618, at *2 (S.D. Tex. Nov. 29, 2005) ("The court is not required to consider the motion as a summary judgment motion, even if affidavits are included, if the court does not rely on such affidavits in reaching its decision."). When the extra-pleading material is lacking in completeness, the court is more likely to reject it. *Porter*, 802 F. Supp. at 52.

### III. ANALYSIS

**A. The Court Denies Defendants' Motion to Strike Plaintiff's Exhibits (D.E. 63) as Moot.**

Defendants argue the court should strike the exhibits attached to Wilhite's response. After Defendants moved to dismiss the complaint, Wilhite filed her response, attaching thirty-nine exhibits. (D.E. 59–59-11.) The court's analysis of Defendants' Rule 12(b)(6) motion is confined to the four corners of the complaint. The court has not considered any of the exhibits in its analysis. *See Porter*, 802 F. Supp. at 52.

Defendant's Motion to Strike Exhibits to Plaintiff's Response to Their Motion to Dismiss (D.E. 63) is DENIED as MOOT.

## B. The Court Recommends that Defendants' Rule 12(b)(1) Motion be DENIED.

Defendants argue that Wilhite lacks standing because Wilhite has not stated with specificity how the actions of each Defendant "fulfill the elements of the claims she wishes to pursue." (D.E. 42 at 6.) "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Rather, it "turns on the nature and source of the claim asserted." *Warth*, 422 U.S. at 500. There are three parts to the Article III standing requirement: "(1) a plaintiff must state an actual or threatened injury to himself; (2) the injury must be a result of the allegedly illegal conduct of the defendant; and (3) the injury must be capable of redress by a favorable decision with respect to the challenged conduct." *See Adolph v. Fed. Emergency Mgmt. Agency of the U.S.*, 854 F.2d 732, 735 (5th Cir. 1988).

Wilhite's SAC satisfies the standing requirement. The complaint states that she suffered an injury when her licenses were revoked. SAC ¶ 13. It also states that her injury is traceable to Rice, Hewitt-Saffold, and Harvey. Wilhite alleges that Rice conspired with her supervisee, Hewitt-Saffold, and Rice's supervisor, Harvey, to wrongfully revoke Wilhite's licenses. SAC ¶ 21. Specifically, Wilhite alleges that Rice recruited her supervisees, including Hewitt-Saffold, to conduct inspections and use false facts against Royal T. SAC ¶¶ 4, 14, 33, 35, 38, 55–57, 63–65, 74, 80. Wilhite alleges that Hewitt-Saffold issued citations against Royal T under Rice's

8

direction on February 1, 2016, February 16, 2016, and again on February 24, 2016. SAC ¶¶ 63–79. Wilhite alleges that Harvey knew about Rice's conflict of interest but helped Rice eliminate Royal T as a competitor to Rice's childcare business. SAC ¶¶ 15, 94–97. It is undisputed that a favorable decision from this court could redress Wilhite's injury.

Wilhite has standing. The court recommends that Defendants' Rule 12(b)(1) motion be DENIED.

### C. The Court Recommends that Defendants' Rule 12(b)(6) Motion be GRANTED.

Defendants raise qualified immunity. The doctrine of qualified immunity provides that a state official performing discretionary functions may be shielded from incurring individual liability for civil damages, as long as the official has not violated clearly established federal law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Price v. Brittain*, 874 F.2d 252, 260 (5th Cir. 1989).

Where qualified immunity is asserted as a defense to a claim brought under 42 U.S.C. § 1983, a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (internal quotation marks omitted). "[T]he plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019). To meet this burden, "[t]he plaintiff must show (1) that the official violated a statutory or

9

constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks omitted). For the reasons stated below, the court finds that Wilhite has not met her burden to plead facts that defeat immunity.

Wilhite alleges that Defendants abused legal process and used false evidence against her to revoke her state-issued licenses. *See* SAC ¶ 117. The claim that state actors abused the legal process must be tied to an allegation that the state actors violated a cognizable constitutional right. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in [a section 1983] claim is to identify the specific constitutional right allegedly infringed."); *see also Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (holding that a claim of malicious prosecution "standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law"). Wilhite alleges that her Fourth and Fourteenth Amendment rights were violated by the abuse of legal process. SAC ¶¶ 100–17. The court analyzes each constitutional claim in turn.

**1. Wilhite has not stated a procedural due process violation.**

The plaintiff must hold an interest protected by the Due Process Clause of the Fourteenth Amendment to raise a procedural due process claim. Wilhite's interest in her state-issued licenses constitutes an interest that is protected by the Fourteenth

Amendment. *See Cripps v. Louisiana Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016) ("[T]he denial of a license to practice one's profession can be a deprivation of a liberty interest if the reasons for the denial offend due process."). "The Fourteenth Amendment also requires that the plaintiff, in order to establish a constitutional violation, prove that the deprivation of the property right occurred without due process of law." *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 (5th Cir. 2007). It is not the deprivation itself, but the deprivation "without due process of law" that is unconstitutional. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

To comply with the procedural due process requirements, the state, either before or after depriving a person's protected interest, must give the person an opportunity to be heard "at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).[2] In general, where the state actor deprives the plaintiff's property by "random and unauthorized" action, the "deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir.1995). If the state action was authorized, "the state must

---

[2] *Daniels v. Williams* overruled *Parratt*'s holding that mere negligent conduct could affect a deprivation within the meaning of the Fourteenth Amendment Due Process Clause.

provide notice and an opportunity for a hearing to the property owner" before the deprivation. *Marco Outdoor Advert.*, 489 F.3d at 673. In either case, the plaintiff has the burden to prove that the state-law proceedings were inadequate. *See Collins v. King*, 743 F.2d 248, 252 (5th Cir. 1984) (post-deprivation remedy); *Marco Outdoor Advert.*, 489 F.3d at 673 (pre-deprivation remedy).

The essence of Wilhite's allegations is that Rice and other Defendants went beyond the scope of their delegated powers in revoking her licenses. SAC ¶¶ 100–17. Wilhite has alleged that Defendants' actions were random and unauthorized. Therefore, Wilhite's due process claim relates only to the adequacy of procedures that the state provides to a person after it takes away her vocational licenses.

A proceeding under state law is not deficient just because it does not provide relief that is coextensive with that of section 1983. *See Parratt*, 451 U.S. at 544. Courts have held that the existence of a state-law procedure to challenge an unfavorable administrative action in a hearing satisfies the requirements of procedural due process. *See, e.g., Reams v. Irvin*, 561 F.3d 1258, 1266–67 (11th Cir. 2009) (holding that a post-deprivation hearing and a judicial review made available by the state foreclosed any constitutional challenge to the procedural adequacy of the state's impoundment of the plaintiff's property); *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 536 (7th Cir. 2008) (holding that the plaintiff did not state a due process claim because the post-termination hearing, provided by state law,

constituted adequate remedy for the alleged violation of existing procedural requirements).

Here, Texas afforded Wilhite the opportunity to contest the revocation of her licenses at the State Office of Administrative Hearings and to seek judicial review of that hearing. Tex. Hum. Res. Code § 42.072(b). Wilhite makes the conclusory argument that she "was not afforded constitutionally guaranteed due process throughout the entirety of the dispute," without detailing why the proceedings under section 42.072(b) were inadequate to redress the revocation of her licenses. The court may neither "strain to find inferences favorable to the [plaintiff]" nor "accept conclusory allegations." *Southland Sec.*, 365 F.3d at 361. It follows that Wilhite has not met her burden to plead sufficient facts to state a plausible claim that Defendants violated her procedural due process rights guaranteed by the Fourteenth Amendment.

### 2. Wilhite has not stated a substantive due process violation.

While Wilhite makes a general claim that she was denied due process, she does not specify that Defendants violated her substantive due process rights. To the extent that Wilhite's substantive due process rights are implicated by her claim that Defendants "maliciously conspired to abuse legal process and violate the Constitution for the express purposes of closing ROYAL T," SAC ¶ 21, the court finds that Wilhite has not stated a claim asserting a substantive due process violation.

13

Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotation marks omitted). To state a substantive due process claim based on an abuse of executive power, the plaintiff "must (1) 'allege a deprivation of a constitutionally protected right;' and (2) demonstrate that the government action is not 'rationally related to a legitimate governmental interest.'" *Cripps*, 819 F.3d at 232 (citing *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006)).

Courts ask "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cripps*, 819 F.3d at 232. The facts must show more than the defendants' wrongdoing. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("[W]e have made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."); *see also Daniels*, 474 U.S. at 332 ("We have previously rejected reasoning that 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.'"). Thus, "conscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006).

It follows that the court's inquiry necessarily entails "a comprehensive analysis of the attendant circumstances before any abuse of official power is condemned as conscience-shocking." *Pagan*, 448 F.3d at 32. "As a general matter, the Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Albright*, 510 U.S. at 271–72.

Under the two-step inquiry outlined in *Iqbal*, the court first identifies and disregards conclusory allegations. *Iqbal*, 556 U.S. at 664. Legal conclusions, or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled the assumption of truth. *Id.* at 678. Neither "unsupported conclusions . . . of mixed fact and law" nor "unwarranted deductions" are acceptable. *Southland Sec.*, 365 F.3d at 361; *Stanton v. United States*, 434 F.2d 1273, 1276 (5th Cir. 1970).

The following allegations fall under the rubric of conclusory allegations, unwarranted deductions, or legal conclusions that the court must exclude:

- Rice "desired to . . . tarnish Wilhite's business career, similar to and capture Wilhite's long established children's daycare center clientele and business";
- "Rice acted under color of state law and used her position and power at CCL to destroy Wilhite's business";
- Defendants "maliciously conspired to abuse legal process and violate the Constitution for the express purposes of closing ROYAL T, eliminating competition for Defendant Rice's planned childcare center";

15

- Rice became jealous of Wilhite's business and developed a plan to form her own childcare business, which prompted her to "accelerate her malicious plan to put Wilhite out of business and speed up the citations necessary to administratively eliminate Wilhite's competition for the children in their common area";
- Rice's strategy to "harm and close Wilhite's business was to pack her state file with claimed violations";
- The citations issued against Wilhite "were arbitrary, capricious, and against the great weight of the evidence available at the time of the inspection."

SAC ¶¶ 14, 17–18, 21, 31–32, 35, 56–58. The court disregards these allegations.

Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 664. The court may not "strain to find inferences favorable to the plaintiffs." *Southland Sec.*, 365 F.3d at 361.

The court finds that the SAC does not raise a plausible claim for relief. Wilhite admits to certain violations, and the rest of the facts do not allow the court to ascertain whether Defendants violated her substantive due process rights. Wilhite does not deny that she had not yet completed a fire inspection on February 1, 2016, when she was first cited for not having completed an annual fire inspection. SAC ¶ 64. She merely alleges that she herself had "taken the appropriate steps to resolve the battery concern and told Rice that there was no immediate or outstanding safety issue." SAC ¶ 64. In addition, Wilhite admits that on November 20, 2015, when the first citation about her daughter was issued against Royal T, the daughter

16

had not yet completed the requisite criminal background check despite having "had an incident in her past." SAC ¶¶ 48–54.

While Wilhite does allege the additional citations she received on later dates were meritless, SAC ¶¶ 65–67, 70–79,³ she does not provide any facts that support her allegations that the citations were fabricated. For example, Wilhite leaves out what regulations Royal T was said to have violated, what the elements for each violation were, and whether Wilhite negated all of the elements. She does not say what was false or fabricated. The lack of facts in the SAC makes impossible the "comprehensive analysis" the court is required to conduct to determine whether the defendants acted in a manner that would "shock the conscience." *See Pagan*, 448 F.3d at 32.

The mere allegation that Defendant Rice had a personal business interest, by itself, is not enough to show that her conduct was so egregious as to violate substantive due process. For example, in *Bush v. City of Gulfport, Miss.*, 454 F. App'x 270 (5th Cir. 2011), the plaintiff, who was denied a building permit by the

---

³ Wilhite alleges that Hewitt-Saffold issued additional citations on February 16, 2016, although by that time "the Fire Marshall had already visited the facility and had authorized her to operate while working to resolve the back-up battery issue." SAC ¶¶ 70–74. Wilhite alleges that Hewitt-Saffold issued another citation on February 24, 2016 although "the Fire Marshall's inspection of ROYAL T had been performed and there were no safety issues documented." SAC ¶¶ 75–79. As to the citations issued for Wilhite's daughter, Wilhite alleges that Rice issued a citation on February 1, 2016, for her daughter being present on Royal T's premises although Wilhite "explained [to Rice] that the risk evaluation had been requested, performed and completed, and that there was no problem with her daughter being present." SAC ¶¶ 65–67.

17

defendant city, raised a substantive due process claim alleging that the city's mayor denied his application in order to advance the mayor's own economic interest. *Bush*, 454 F. App'x at 277. The Court of Appeals for the Fifth Circuit found that the mayor "may have taken a personal interest in the property, but none of his actions [rose] to the level of a constitutional violation." *Id.* at 278. In another example, *Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258 (11th Cir.2003), the Court of Appeals for the Eleventh Circuit reached a similar conclusion in holding as follows:

> [E]ven with . . . evidence that the City targeted [the plaintiff] out of animosity, it is equally clear that the City was also motivated in part by a legitimate desire to enact a comprehensive and internally consistent land use system. It follows from these reasonable and legitimate governmental objectives that even if the Permit was a fundamental right protected by substantive due process, the City's actions were not constitutionally arbitrary and irrational.

*Id.* at 1264.

Here, even assuming that the revocation of Wilhite's licenses were driven in part by Defendants' personal interests, it is clear that the state action was also driven by the state's legitimate interest in promoting the safety of children in day care centers. Based on Wilhite's allegations in her SAC, it cannot be said that the State acted in an unconstitutionally arbitrary manner.

### 3. Wilhite has not stated a Fourth Amendment violation.

Wilhite alleges that Defendants violated her Fourth Amendment rights. Wilhite does not allege that Defendants used unreasonable force or subjected her to a search or seizure. She only alleges that Defendants maliciously used false evidence

18

to deprive her of her licenses. The court construes this to mean that she is raising a malicious prosecution claim under the Fourth Amendment.

To the extent that the Fourth Amendment is implicated in the context of a malicious prosecution claim, courts have held that the claim relates to "pretrial deprivations of liberty," which "go hand in hand with criminal prosecutions." *See Albright*, 510 U.S. at 274; *see also Castellano*, 352 F.3d at 959 ("[T]he umbrella of the Fourth Amendment, broad and powerful as it is, casts its protection solely over the pretrial events of a [criminal] prosecution."). Wilhite was not criminally prosecuted. Thus, Wilhite has not stated facts to show that Defendants violated a clearly established right under the Fourth Amendment by abusing legal process.

## IV. CONCLUSION

Because Wilhite has not alleged any facts that show Defendants violated her constitutional rights, she has not met her burden to plead facts to defeat Defendants' assertion of qualified immunity.

The court finds that an amendment of her complaint would be futile. Wilhite has amended her complaint twice, once as a matter of right and again with leave of court. (*See* D.E. 12, 41.) Although Wilhite states in the SAC that she plans to amend her complaint for the third time, she has not moved for the court's leave to amend her complaint in the nine months that have passed since she filed the SAC. (*See* D.E. 41.) Given the history of this case, the court finds that Wilhite is "unwilling or

unable to amend in a manner that will avoid dismissal." *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Accordingly, the court recommends that Defendants' motion to dismiss (D.E. 42) be GRANTED. All other pending motions, including Defendants' motion to strike Plaintiff's exhibits (D.E. 63), are DENIED as MOOT.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on January 27, 2020.

_____
Peter Bray
United States Magistrate Judge